MARY E. KENNETT, *Appellant*, v. MRS. HOWARD KIDD et al., *Appellees.*

No. 17,742.

OPINION ON REHEARING.

HEADNOTE BY THE REPORTER.

FRATERNAL BENEFICIARY SOCIETIES—*Can Not Take under Will.* The original decision (87 Kan. 652, 125 Pac. 36) holding that a local camp of Modern Woodmen is not competent to take and hold property given to it by will is, on rehearing, adhered to.

Appeal from Geary district court. Opinion on rehearing filed March 8, 1913. Former modification adhered to. (For original opinion, see 87 Kan. 652, 125 Pac. 36.)

*Lee Monroe, W. S. Roark,* and *Carr W. Taylor,* all of Topeka, for the appellant.

*Ernest R. Simon, James A. McClure,* both of Topeka, *J. V. Humphrey,* of Junction City, and *F. L. Williams,* of Clay Center, for the appellees.

The opinion of the court was delivered by

WEST, J.: A rehearing was granted to enable the parties to present fully their views on questions which it was claimed had not been properly presented or correctly decided. The principal contention is that we were in error in holding that the local camp could not take the property willed to it to use as it saw fit. A reëxamination of the matter leads to the same conclusion. In 1898 the legislature took control of fraternal beneficiary societies, defining them and prescribing the restrictions under which they were to operate. (Laws 1898, ch. 23.) Section 1 provided that the fund from which the payment of benefits was to be made and from which the expenses of such association should be defrayed "shall be derived from assessments or dues collected from its members." The next year this was amended so as to read: "assessments, premiums or dues collected from its members, and interest accumulations thereon." (Laws 1899, ch. 147, § 1, Gen. Stat. 1909, § 4303.) Section 8 (Gen. Stat. 1909, § 4310) makes a fraternal assessment order organized under the act a body corporate and politic with power to take, purchase, hold and dispose of real estate for the purposes of the corporation. But there is nothing in the entire act thus empowering a local camp and nowhere in the statutes can be found any provision that such camp is to be deemed a corporation. Indeed the act itself makes no mention of local or subordinate organizations. However, section 1 of chapter 164 of the Laws of 1899, as amended by section 1 of chapter 171 of the Laws of 1909 (Gen. Stat. 1909, § 1832),

authorizes any subordinate lodge or camp, under control of a supreme, grand or other superior organization, to purchase, own, manage, control, improve, mortgage and dispose of such real estate, including necessary buildings, as may be necessary to provide suitable accommodations for holding its meetings and transacting its business. It also authorizes such camp to handle stock in a corporation organized for the purpose of erecting such buildings. The act vests the title of such property in the local organization and gives it a right to contract, sue and be sued in any manner affecting such real estate or buildings. Only to this extent can the camp claim any corporate rights or character.

The legislature having twice taken pains to prescribe the only source of income to the parent order itself, we must conclude that it was not the intention to permit a local camp to be the beneficiary in a will. Neither organization is for profit, but each is for the mutual benefit of its members, and especially for the survivors of its members, who have contributed to the general fund in accordance with the rules prescribed by the association itself. There is no restriction on using, for the purpose of providing necessary buildings, a portion of the income received in the manner pointed out by statute. But the case is not one of an ordinary corporation, which all agree may take by will unless expressly precluded; it is the case of a local fraternal beneficiary body, which the legislature has confined within a narrow zone of activity, dealing out its powers with a sparing hand. If a man in advanced years can be induced to devote the bulk of his estate to a local camp as was the testator in this case, then there is no reason why other benefactors might not add their gifts until a local organization of a few neighbors could become the holder of property of great value, far beyond any real or imaginary needs for the transaction of its business.

The decision is not to be carried beyond its terms and does not interfere with the privileges accorded the societies and associations, including Masons and Odd Fellows, mentioned in section 1830 of the General Statutes of 1909. The authority granted to local subordinate organizations by section 1832, in no wise enlarges or changes the source of income from which they may provide necessary buildings, but simply directs how they may handle and hold such property instead of doing so by and through the grand or superior organization.

In *Bankers' Union v. Crawford*, 67 Kan. 449, 73 Pac. 79, it was held that one fraternal beneficiary association has no authority to consolidate with another, or to contract to pay a death loss of another like association in consideration of its transfer of its membership and offices. In the opinion it was said:

"Its business is defined in the statute to be the making of provision for the payment of benefits in case of death, sickness, or temporary disability, and this business must be carried on for the sole benefit of its members and their beneficiaries. For the purpose of carrying on this business, such associations are authorized by the statute to create a fund 'from which the expenses of such association shall be defrayed,' which 'shall be derived from assessments, premiums or dues from its members, and interest accumulations thereon.' Thus it appears clearly that these associations are to be administered for the sole benefit of their members and their beneficiaries, by means of assessments and dues collected from such members; that is, that only members may be called upon to contribute, and only they or their beneficiaries may receive indemnity.

"These associations are not permitted to go out and engage generally in the business of furnishing indemnity. Their distinct characteristics and charter life would be destroyed in so doing." (p. 456.)

(See, also, *Scott v. Bankers' Union*, 73 Kan. 575, 85 Pac. 604; *Boice v. Shepard*, 78 Kan. 308, 311, 96 Pac. 485.)

It may be said with equal propriety that local camps are not to be permitted to go into real estate or general business even as beneficiaries of testators who seek to give their property to use as such camps see fit.

We do not feel impelled to change the views expressed in the former opinion.